# United States District Court
## Middle District of Florida
### Orlando Division

ANTHONY FEACHER,

                        Plaintiff,

-vs-                                               Case No.  6:04-cv-439-Orl-KRS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

_____

# Order

       This matter came before the Court for consideration without oral argument on the complaint filed by Anthony Feacher seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for social security disability benefits.  Doc. No. 1.  The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA").  Doc. Nos. 9.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Middle District of Florida Local Rule 6.05 for adjudication.  Doc. Nos. 11, 12.

## I.      PROCEDURAL BACKGROUND.

       Feacher applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq*., alleging a disability onset date of July 17, 2000.  TR. 61-64.  The SSA denied Feacher's application both initially and on reconsideration.  TR. 51-52, 55-57.  Then, Feacher made a timely request for a hearing.  TR. 49.

An Administrative Law Judge ("ALJ") held a hearing on November 27, 2002.  TR. 346.

Feacher, who was accompanied by his attorney, testified at the hearing.  TR. 347-71.

The ALJ found that Feacher had not engaged in substantial gainful activity since July 17,

2000, the alleged onset date of his disability.  TR. 17-18.  The ALJ concluded that the medical

evidence showed Feacher had anxiety, which was a non-severe mental impairment, as well as

lumbar degenerative disc disease, insulin-dependent diabetes mellitus, and obesity, which were

severe impairments.  TR. 18. He concluded that these impairments did not meet or equal any listed

impairments. TR.  18.

The ALJ found that Feacher had the residual functional capacity ("RFC")[1]  to perform a

full range of sedentary work.  TR. 23.  In reaching this conclusion, the ALJ found further that

Feacher's claims of functional limitations were inconsistent with and disproportionate to the

medical evidence in the record.  TR. 22.  The ALJ stated:

> The claimant's physical examination . . . revealed that he drives and performs his
> activities of daily living independently.  There was no evidence of radiculopathy or
> neuropathy.  His diabetes mellitus has been noted to be under good control.  His
> anxiety is controlled with medication.  While the medical evidence documents . . .
> degenerative disc disease, diabetes, and obesity, he is nevertheless capable of
> performing at least sedentary work.

---

[1] Residual functional capacity ("RFC") "is what an individual can still do despite his or her limitations."  Titles
II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474-01 (1996).  It takes into account
"the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain,
may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and
mental activities."  *Id.*  RFC assesses the individual's ability "to do sustained work activities in an ordinary work setting
on a regular and continuing basis . . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an
equivalent work schedule.  RFC does not represent the least an individual can do despite his or her limitations or
restrictions, but the most."  *Id.*

-2-

TR. 21.  The ALJ also acknowledged that Feacher had been awarded worker's compensation benefits, but recognized that the worker's compensation finding was not binding on the SSA.  TR. 22.

The ALJ found that Feacher could not return to his past relevant work.  TR. 23.  Using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt P, App. 2 (the "grids"), the ALJ concluded that there was work Feacher could perform and, therefore, that he was not disabled. TR. 23.

Feacher requested review of the ALJ's decision.  TR. 9, 12.  He submitted additional records from the Veteran's Administration in support of his review request.  TR. 6, 305-43.  On January 30, 2004, the Appeals Council announced that it had reviewed the additional evidence but found no basis for changing the ALJ's decision.  TR. 3-5.  Feacher timely sought review of this decision by the United States District Court.  Doc. No. 1.

## II.  JURISDICTION.

The Commissioner issued a final decision after a hearing with respect to Feacher's application for disability benefits under OASDI.  Therefore, the Court has jurisdiction of this matter under 42 U.S.C. § 405(g).

## III.  STATEMENT OF FACTS.

A.  *Feacher's Testimony.*

Feacher was born on November 28, 1955.  TR. 351.  He is five feet nine inches tall and weighed 217 pounds.  TR. 357.  He had recently weighed as much as 230 pounds, but lost weight due to a decrease in his appetite.  TR. 357.

Feacher completed the twelfth grade, joined the U.S. Navy, and obtained a General Educational Development high school equivalency diploma in 1975.  TR. 351.  In addition, Feacher received an associates degree in general studies.  TR. 351.  Feacher served as a torpedoman's mate in the Navy for nineteen years, and received an honorable discharge.  TR. 351-52.  Feacher also performed work selling electronics at a Navy post exchange.  TR. 352-53.  He subsequently worked as a Deputy Sheriff for Orange County, Florida from 1996 until the onset date of his disability.  TR. 352.

On July 17, 2000, Feacher, while working as a deputy, was called to try to stop a riot that was occurring at a nightclub.  TR. 353-54.  When he attempted to stop one of the patrons, Feacher tripped over a curb fell on his side where his gun was located.  TR. 354.  As a result of his injury, Feacher reached a worker's compensation settlement with the Sheriff's Department in September 2001.  TR. 354.  In addition to his July 17, 2000, injury, Feacher also suffered from a lingering neck injury he incurred when someone hit him while he was performing his duties as a Sheriff's Deputy.  TR. 355.

Since his July 2000 accident, Feacher has been "going crazy."  TR. 356.  He took "a lot of pills" to make himself healthy, but they did not seem to be helping.  TR. 356.  His pills caused the adverse side effects of sleepiness, confusion, and depression.  TR. 356-57.

Feacher typically did not eat three meals per day.  TR. 357.  His wife prepared all of his meals at home, except for occasional sandwich-making that Feacher did when he would become "shaky."  TR. 72, 358.

-4-

At one point Feacher was planning to take up swimming for exercise, but he never began. TR. 358.  He engaged in no social activities beyond occasionally talking to a retired neighbor and talking on the telephone.  TR. 360.  Feacher also spent a great deal of time reading the Bible and watching television.  TR. 360.  He was able to take care of his own personal hygiene and grooming needs, with some assistance from his wife.  TR. 73, 361.  Sometimes he helped with washing dishes, but his wife did the rest of the housework.  TR. 361.  Since 2000, Feacher had taken one long trip, to Live Oak, Florida, but he had not traveled outside of the state since then.  TR. 362. Feacher had insomnia and went two or three nights per week without sleep, and he frequently napped during the day.  TR. 362-63.

Feacher did drive, but "not much."  TR. 363.  When he drove, he would go to his mother's house, which was approximately three miles from his home.  TR. 363.  He also drove to a gas station and Wal-Mart two to three times per month.  TR. 363-64.  Sometimes he drove to see his uncle, who lived and worked approximately one mile from Feacher's home.  TR. 364.

Feacher's diabetes was out of control; it seemed to continue to get worse despite his physicians' efforts.  TR. 364-65.  His diabetes caused blurred vision and neuropathy of the feet. TR. 365.  He also suffered from diabetes-related erectile dysfunction.  TR. 365.  Feacher took insulin twice each day.  TR. 365.  His blood sugar varied between 194 and 300, but sometimes went as low as 30.  TR. 365-66.

Feacher's foot neuropathy made him feel like he was "standing on bones," and sometimes prevented him from walking.  TR. 366.  His low back hurt "real bad" and caused his right leg to go

numb most of the time.  TR. 366.  Pain radiated from his neck to his right shoulder and caused

headaches.  TR. 367.

Feacher could walk from his house to the end of his driveway, about forty feet, but longer

distances caused him to experience pain from his buttocks to his feet.  TR. 367.  He estimated that

he could stand only stand for "a few minutes" at a time, and could not sit for long or his right side

would become very weak.  TR. 367-68.  He could sit for approximately one hour at a time but then

he needed to move to stop the pain radiating down his leg.  TR. 368-69.  He could not bend,

choosing to stoop instead.  TR. 77, 369.

Feacher had depression and anxiety, for which he received treatment.  TR. 369.  He took a

drug called Amitriptyline, which he described as a mood elevator.  TR. 369.  His anxiety and

depression made it difficult to socialize with people.  TR. 370.  Prior to his injury he "hung out"

with his fellow police officers and would mingle with the public.  TR. 370.

B.      *Medical Evidence.*[2]

On July 20, 2000, Feacher visited the Orlando Clinic for treatment complaining of right hip

pain radiating to his knee as a result of a fall that occurred when he was breaking up a fight.  TR.

108-09.  The physician observed that Feacher walked with a slight limp.  TR. 109.  A straight leg

raising test[3] was negative.  TR. 109.  Feacher exhibited slight discomfort in holding his leg straight

---

[2]  I have omitted a summary of Feacher's complaints of mental impairments, and treatment for mental issues, because he does not assert in his memorandum of law that the SSA improperly determined that his mental impairments were not severe.

[3]  "The simple straight-leg raising test  is performed with the patient lying supine, with the backs of the knees flat on the examining table. The knee is held straight, and the foot of one leg is raised while the hip is slowly flexed. Flexion of the leg through a range of 60 to 90 degrees is considered to be normal. The test is positive when pain is reproduced down the posterior thigh below the knee between the angle of 30 to 70 degrees." *Attorneys' Textbook of Medicine* ¶ 15.34(1) (3d ed. 1999).

for examination.  TR. 109.  There was slight fluid in the right lateral meniscus region and slight

tenderness along the right sciatic nerve, but Feacher was able to lie down without difficulty.  TR.

109.  The physician's impressions were right sciatica[4] and right knee strain.  TR. 109.  The

physician prescribed Vioxx, Ultram, and Skelaxin,[5] and gave Feacher a set of exercises to

complete and told him to apply heat to his painful areas.  TR. 109.

On July 25, 2000, Feacher returned to the Orlando Clinic for a follow-up appointment.

This time, a straight-leg raising test was positive, and the physician could not complete his exam

due to the amount of pain Feacher was experiencing.  TR. 108.  The physician recommended

keeping Feacher off work, and referred him to an orthopedic specialist for evaluation and

treatment.  TR. 108.

From August 2000 to July 2001, Feacher received treatment from Gregory Munson, M.D.,

Reginald L. Tall, M.D., and Colleen M. Zittel, M.D., at the Jewett Orthopaedic Clinic in Winter

Park, Florida.  TR. 133-48.  On August 17, 2000, Feacher complained of low back and right thigh

pain, which caused him to limp.  TR. 147.  He also had numbness in his right thigh.  TR. 147.

Upon examination, Dr. Munson noted that Feacher could forward flex, and a straight-leg raising

test was negative.  Dr. Munson noted a slight hypesthesia (loss of feeling) in Feacher's right thigh.

TR. 147.  Upon reviewing x-rays of Feacher's back, Dr. Munson noted that there appeared to be

some degenerative facet changes in his lumbar discs, but that otherwise Feacher appeared to be

---

[4]  Sciatica refers to pain in the lower back that radiates down to the hip.  Stedman's at 1580.

[5]  Vioxx is a non-steroidal anti-inflammatory drug, Ultram is a pain-relief drug that affects pain receptors in the brain, and Skelaxin is a muscle-relaxing drug.  Cerner Multum, Inc., *Lortab*, DRUGS.COM (July 9, 2003), *at* http://www.drugs.com/vioxx.html, http://www.drugs.com/ultram.html, http://www.drugs.com/skelaxin.html (last visited Aug. 25, 2005) (hereinafter "Drugs.com").

normal.  TR. 147.  Dr. Munson continued Feacher's prescriptions for Skelaxin, hydrocodone, and

Naprosyn,[6] ordered an MRI of Feacher's lumbar spine, and ordered Feacher not to return to work.

TR. 147.  Donald L. Renfrew, M.D., performed an MRI.  TR. 145.  Dr. Renfrew concluded that

Feacher had a "possibly minimally caudally dissecting disc protrusion" at his L5-S1 vertebrae.[7]

TR. 145.  Dr. Renfrew opined that Feacher's pain could be from chemical irritation of the right S1

nerve root.  TR. 145.  Dr. Munson, interpreting the results of Feacher's MRI, formulated the

impression that Feacher had a right-sided herniated disc and ordered that Feacher was unable to

return to work for two weeks.  TR. 144.

On September 15, 2000, Dr. Munson examined Feacher again and his diagnosis remained

the same.  TR. 143.  Dr. Munson noted that Feacher was using a cane.  TR. 143.  Dr. Munson

ordered a bone scan to rule out an occult fracture at Feacher's pelvis or hip, and ordered him not to

return to work until after the bone scan was completed.  TR. 143.  Michael W. Hayt, M.D.,

conducted the bone scan, and found the results of the bone scan to be normal.  TR. 142.

From October 2000 to March 2001, Feacher's physicians administered epidural steroid

injections, and ordered him to refrain from working.  TR. 137-141.

On June 5, 2001, Dr. Tall ordered a nerve conduction study of Feacher, the results of which

showed no electrodiagnostic evidence for lumbosacral radiculopathy or other focal neuropathy for

either of Feacher's legs.  TR. 134-35.  In July 2001, Dr. Tall's impression was an L5/S1 herniated

---

[6]  Hydrocodone is a poppy-based narcotic drug, and Naprosyn is a non-steroidal anti-inflammatory drug.
Drugs.com *at* http://www.drugs.com/hydrocodone.html, http://www.drugs.com/PDR/Naprosyn_Suspension.html (last
visited Aug. 25, 2005).

[7]  In layman's terms, Dr. Renfrew's conclusion translates to a diagnosis that the MRI revealed a slight possibility
that the layer of cartilage between two of Feacher's vertebrae at the very bottom of his spine had slipped a little outside
of the bones between which it is supposed to rest.  Stedman's at 294, 491.

nucleus pulposus with forminal stenosis.  He advised Feacher to remain out of work and wrote that Feacher was "unable to return to his previous occupation."  TR. 133.  Dr. Zittel examined Feacher and found no muscle atrophy in either leg, with good muscle strength bilaterally.  However, deep tendon reflexes were absent in both quadriceps.  TR. 134.

Feacher's medical records include extensive reports of treatment he received from U.S. Department of Veteran's Affairs ("VA") facilities from 1995 to 2002.  TR. 149-220; 249-304. Feacher was consistently diagnosed with diabetes mellitus, hyperlipidemia, and prostatitis.[8]  *See, e.g.,* TR. 170-71, 173.

In November 2001, Feacher went to a VA hospital complaining of pain in his feet, and examinations revealed that he had diminished sensation in his feet caused by his diabetes.  TR. 285-86.  On January 17, 2002, Lithium Lin, M.D., noted that Feacher had chronic bilateral foot pain.  TR. 283.  Feacher subsequently reported that neither stretching exercises nor shock absorber inserts in his shoes were relieving his pain.  TR. 275, 278.  A motor nerve study of Feacher's feet on April 6, 2002, revealed moderate sensori-motor demyelinating and axonal peripheral neuropathy,[9] which was consistent with his history of diabetes mellitus.  TR. 273.

In June 2002, Dr. Lin noted that Feacher's diabetes was poorly controlled.  TR. 269.  Later the same month, Dr. Lin assessed Feacher with peripheral neuropathy per the nerve conduction

---

[8]  Hyperlipidemia, also known as lipemia, is the presence of an abnormally large amount of lipids in the circulating blood.  Stedman's at 985.  Prostatitis is inflammation of the prostate.  *Id.* at 1441.

[9]  "Peripheral neuropathy causes either pain or loss of feeling in the toes, feet, legs, hands, and arms."  National Diabetes Information Clearinghouse, *Diabetic Neuropathies: The Nerve Damage of Diabetes* (May 2002), *at* http://diabetes.niddk.nih.gov/dm/pubs/neuropathies/index.htm#types (last visited Aug. 25, 2005).  "Peripheral neuropathy can be demyelinating, axonal, or both, as determined by electromyography (EMG) and nerve conduction studies (NCS)." Athena Diagnostics, *Peripheral Neuropathy, at* http://www.athenadiagnostics.com/site/content/ diagnostic_ed/neuro_disorders/peripheral_neuropathy.asp (last visited Aug. 25, 2005).

study results.  TR. 264.  In October 2002, Feacher again reported that his diabetes was
uncontrolled.  TR. 269.

Records presented to the Appeals Council reflect treatment Feacher received from the VA
in 2003.  On February 11, 2003, Feacher complained of a headache, neck pain, and shoulder pain.
TR. 339-40.  Dr. Lin noted that Feacher's diabetes remained uncontrolled.  TR. 339.  Spinal x-rays
taken in February 2003 revealed degenerative changes.  TR. 306, 309.

C.      *Reviewing Physicians' Opinions.*

On May 31, 2001, M. De la Cerna, M.D., completed a physical RFC  assessment based on
a review of Feacher's records.  TR. 125-32.  Dr. De la Cerna opined that Feacher's impairments
would subject him to the following exertional limitations: (1) occasionally lift or carry 20 pounds;
(2) frequently lift or carry 10 pounds; (3) stand or walk for a total of six hours in an eight-hour
work day; and (4) sit for a total of six hours in an eight-hour work day.  TR. 126.  Dr. De la Cerna
opined that Feacher would have occasional limitations in climbing, balancing, stooping, kneeling,
crouching, and crawling.  TR. 127.

On October 7, 2001, David Z. Kitay, M.D., completed a physical RFC assessment of
Feacher.  TR. 235-42.  Dr. Kitay reached the same conclusions with respect to Feacher's exertional
limitations as Dr. de la Cerna.  TR. 236.  Dr. Kitay further opined that Feacher would be
occasionally limited in stooping and crouching.  TR. 237**.**

**IV.     STANDARD OF REVIEW.**

To be entitled to Social Security disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).  The Act provides further that a claimant is not disabled if he or she is capable of performing his previous work.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  In a case seeking disability benefits under SSI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

-11-

The court "'must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision.'" *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).  Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Id.*  While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

## V.    ANALYSIS.

Feacher asserts that the ALJ committed several errors.  Among other things, Feacher asserts that the ALJ did not properly assess his nonexertional impairments, including pain.  As a result, it was improper for him to rely upon the grids rather than seeking assistance from a vocational expert at step five of the sequential evaluation process.[10]

If proof of a disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553,

---

[10] Feacher also argues that the ALJ failed to give controlling weight to the opinion of Dr. Tall that Feacher could not work.  This argument misreads the record.  Dr. Tall's opinion was that Feacher could not return to his previous occupation, not that he could not work at all.

-12-

1562 (11th Cir. 1995).  If the Commissioner discredits the claimant's subjective testimony, "he

must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62.

> The appropriate legal standard for evaluating a claimant's subjective complaint of
> pain is for the [Commissioner] . . . to consider a claimant's subjective testimony of
> pain if [she] finds evidence of an underlying medical condition, and either (1)
> objective medical evidence to confirm the severity of the alleged pain arising from
> that condition or (2) [that] the objectively determined medical condition must be of
> a severity which can reasonably be expected to give rise to the alleged pain. *Mason
> v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986) (citation omitted).

*Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987).

In this case, the ALJ concluded that Feacher had degenerative disc disease, diabetes and

obesity.  These are objectively-determined medical conditions that can be expected to give rise to

the pain in the legs and back about which Feacher complained.  Medical records also establish that

Feacher had peripheral neuropathy, symptoms of which include pain and loss of feeling in the legs

and feet. Furthermore, the treatment records reflect that Feacher's physicians credited his

complaints of pain, as shown by their prescription of pain medication and use of epidural steroid

injections in an effort to relieve his pain.  This is further evidence that the evidence satisfies the

pain standard.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (ALJ properly applied

pain standard when he took into account type and dosage of medication physicians had prescribed

for claimant).

Once the pain standard has been met, the ALJ has an obligation to consider all evidence

about the "intensity, persistence, and functionally limiting effects of pain of other symptoms. . . ."

*Foote*, 67 F.3d at 1561.  "If the ALJ decided not to credit a claimant's testimony as to her pain, he

must articulate explicit and adequate reasons for doing so." *Id.* at 1562.  In this case, while the

ALJ articulated reasons for discrediting Feacher's complaints of pain, the stated reasons are not supported by substantial evidence in the record.  The ALJ found that Feacher's diabetes mellitus was "under good control," but the medical records are replete with references to Feacher's diabetes being poorly controlled.   The ALJ also stated that the record contained no evidence of neuropathy. While Dr. Tall found no evidence of neuropathy in June 2001, later nerve conduction tests in April 2002 supported Dr. Lin's diagnosis of peripheral neuropathy, which later diagnosis is not controverted by any medical evidence.  Thus, the ALJ's statement that there is no evidence of neuropathy is inconsistent with the record.

The ALJ also found that Feacher's ability to drive a car and perform activities of daily living independently supported his finding that Feacher exaggerated the extent of his functional limitations.   Feacher testified that he drives for short distances, which is not inconsistent with his testimony that he could not sit for more than an hour due to pain.  The record does not support the finding that Feacher was able to perform activities of daily living independently.  Feacher's wife wrote that she had to assist him in bathing.  Both Feacher and his wife reported that Feacher does not engage in other activities of daily living such as cooking and cleaning.

When, as here, the ALJ's stated reasons for discrediting the claimant's testimony about the functional limitations of pain are not supported by substantial evidence in the record, the Court must reverse the decision of the SSA.  *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) (implicit in the requirement that the ALJ articulate reasons for refusing to credit a claimant's subjective pain testimony is the requirement that "such articulation of reasons by the [Commissioner] be supported by substantial evidence."); *accord Foote*, 67 F.2d at 1562.  On

-14-

remand, the SSA should properly assess Feacher's functional limitations arising from pain and other impairments. If any nonexertional impairments are found, the best practice is to call upon a vocational expert at step five of the evaluation process, rather than relying upon the grids. The law in this circuit requires the ALJ to introduce independent evidence of the existence of jobs in the national economy that the claimant can perform. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

## VI.   CONCLUSION.

For the reasons stated above, the decision of the SSA is **REVERSED** and the case be **REMANDED** for further proceedings. It is further **ORDERED** that the Clerk of Court shall issue a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 25, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-15-